JON M. SANDS
Federal Public Defender
**CYNTHIA YIALIZIS** #030987
Assistant Federal Public Defender
**ELIZABETH HANNAH** #038868
Assistant Federal Public Defender
407 W. Congress St. Ste 501
Tucson, Arizona 85706
Telephone: (520) 879-7500
*Attorneys for Defendant*
cynthia_yializis@fd.org
*Elizabeth_Hannah@fd.org*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>  Plaintiff,<br><br>vs.<br><br>Robert Alan Wittenberg,<br><br>  Defendant. | No. 4:24-cr-02540-TUC-RCC (BGM)<br><br>**MOTION IN LIMINE**<br><br>(Oral Argument Requested) |

Robert Alan Wittenberg, by and through undersigned counsel, respectfully requests that the following be precluded at trial:

1. Evidence that firearms purchased by Mr. Wittenberg were recovered by law enforcement officials in unrelated events, pursuant to Federal Rules of Evidence 401 and 403.

2. Testimony from SA Tisch that Mr. Wittenberg did not call to schedule a viewing of the firearms, pursuant to Federal Rules of Evidence 401 and 403, and the 5th Amendment to the U.S. Constitution.

3. Testimony and evidence that Mr. Wittenberg and his mother, Jaime Quintero, did not have a registered recreational vehicle pursuant to Federal Rules of Evidence 401 and 403.

Undersigned counsel avows to the Court that these issues have been discussed with the Government and cannot be resolved informally.

## I. Facts

On September 25, 2023, SA Tisch of ATF was assigned to investigate numerous firearm purchases made by Mr. Wittenberg after two of these firearms were recovered in police investigations. SA Tisch responded to the address Mr. Wittenberg used on the ATF Form 4473 (Firearms Transaction Record), which was a residence located on Flores Dr. in Tucson, AZ. When SA Tisch arrived at the Flores residence, he made contact with a woman named Dahlia Wilcox. The conversation was recorded. Ms. Wilcox told SA Tisch that she is Mr. Wittenberg's grandmother and that Mr. Wittenberg lives with his mother. Mr. Wittenberg last stayed with Ms. Wilcox four years ago, but he used her residence as a mailing address. SA Tisch asked Ms. Wilcox if Mr. Wittenberg had a job. She initially said no and then stated that he helps his stepfather with cars. Ms. Wilcox provided SA Tisch with Mr. Wittenberg's phone number, and advised that Mr. Wittenberg was staying with his mother at a residence located on Richey Blvd.

SA Tisch responded to an address on Richey Blvd. that he believed to be associated with Mr. Wittenberg. The property at this address has several apartment-style residences. When SA Tisch arrived, he knocked on the wrong door and spoke with a tenant, who had to direct SA Tisch to the correct apartment where Mr. Wittenberg was staying with his mother. This conversation was recorded. SA Tisch then knocked on the correct door and made contact with Mr. Wittenberg. SA Tisch proceeded to ask Mr. Wittenberg questions. This conversation was not recorded beyond the introductions because SA Tisch's recorder stopped working for "unknown reasons."

SA Tisch's report summarizes his conversation with Mr. Wittenberg. He notes that Mr. Wittenberg advised him that he purchased "about" 20 firearms recently, and that he sold "approximately five" of them. Mr. Wittenberg could not recall which ones he sold, and SA Tisch did not ask for any details regarding these transactions. SA Tisch asked to see the remaining firearms, which Mr. Wittenberg reported were stored in a recreational vehicle 85 miles away. Mr. Wittenberg allegedly said that the firearms were being purchased for a doomsday scenario and that he was a "prepper.'

Mr. Wittenberg's mother, Jamie Quintero, participated in the interview when Mr. Wittenberg was asked about his annual income. Mr. Wittenberg reported that his annual income was approximately $5,000.00, and that he also received money from his father and dying uncle. SA Tisch characterized these specific statements as nonsensical, without saying why or providing additional details. SA Tisch confronted Mr. Wittenberg about not living at the Flores Drive address, at which point both Mr. Wittenberg and his mother stated that the Flores Drive address was their mailing address. SA Tisch advised Mr. Wittenberg that using this address was a violation of federal law. Mr. Wittenberg allegedly continued to make claims that his real address was not easily searchable, and the police often showed up at the wrong address when called. SA Tisch incidentally did just that when he approached the wrong door. SA Tisch then noted in his report that Mr. Wittenberg expressed a "desire" to live off the grid. SA Tisch recognized this term to mean "not easy to locate."

SA Tisch advised Mr. Wittenberg that he wanted to inspect the remaining firearms to prove that Mr. Wittenberg was not straw purchasing. Mr. Wittenberg said he would

collect the firearms. SA Tisch left Mr. Wittenberg his number and asked Mr. Wittenberg to call him. Mr. Wittenberg did not call SA Tisch, nor did SA Tisch follow up with Mr. Wittenberg.

Mr. Wittenberg was indicted on May 8, 2024, on twenty-one counts of Making a False Statement in Connection with Acquisition of Firearms in violation of 18 USC § 924(a)(1)(A) and one count of Engaging in the Business of Dealing Firearms without a License in violation of 18 USC § 922(a)(1)(A) and § 924(a)(1)(D).

On September 23, 2025, SA Tisch queried ATF databases for all firearms that had been purchased by Mr. Wittenberg and had been recovered by law enforcement. A total of eight firearms, including the two that initiated the investigation, were recovered. The agencies that recovered these firearms were the Los Angeles Police Department, Tucson Police Department, and Douglas Police Department. The reports for each of these cases were disclosed, except for the one from Los Angeles Police Department.

None of these cases involve an investigation into the transfer of the pertinent firearms, and there is no evidence presented about how the individual firearms came to be in possession of the parties involved. More concretely, there is no evidence in any disclosed police report indicating that Mr. Wittenberg sold, gave, or otherwise transferred the pertinent firearms to the parties involved. In fact, there is no evidence that Mr. Wittenberg's name arose in any of these police investigations at all.

On November 3, 2025, SA Tisch obtained registration records from the Arizona Motor Vehicle Department (MVD) for Mr. Wittenberg and his mother, Ms. Quintero. Neither Mr. Wittenberg nor Ms. Quintero had a prior registration for a recreational vehicle.

Both, however, used the Flores address as their "residence address" in registering their vehicles.

A supervening indictment was filed on November 12, 2025. The charges are virtually identical with the exception that the Government added two additional counts for Making a False Statement in Connection with Acquisition of Firearms in violation of 18 USC § 924(a)(1)(A).

## II.     Law and Argument

Federal Rule of Evidence 401 provides that evidence is "relevant if it has any tendency to make a fact more or less probable than it would be without the evidence, and the fact is of consequence in determining the action." Federal Rule of Evidence 403 provides that a Court may exclude relevant evidence if "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

i. The recovery of the eight firearms by law enforcement is not relevant and to the extent that it is, the relevancy is outweighed by a danger of unfair prejudice, misleading the jury, and confusing the issues.

Evidence that eight firearms purchased by Mr. Wittenberg were recovered by law enforcement is irrelevant to all charges and outweighed by the danger of prejudice. There are only two conceivable reasons for the government to introduce this evidence. The first reason is to suggest that Mr. Wittenberg was motivated to provide a false address because he knew the firearms were going to be used unlawfully or transferred to prohibited possessors. The second reason is to suggest that Mr. Wittenberg was engaged in the

5

business of dealing firearms simply because the firearms were recovered during criminal investigations. Neither justification withstands FRE 401 or FRE 403 scrutiny.

Evidence of firearm recovery is not probative of Mr. Wittenberg's alleged use of a false address because Mr. Wittenberg is not charged with straw purchasing. The government does not allege, nor is there any evidence to suggest that Mr. Wittenberg intended for any firearm he purchased to be transferred to a prohibited possessor or otherwise used unlawfully. That these firearms ended up in law enforcement investigations suggests, inappropriately, that Mr. Wittenberg was transferring firearms to individuals he knew were engaged in some kind of illegal activity. Absent an accusation, not present here, that Mr. Wittenberg knew the firearms he purchased would be used unlawfully, evidence that the firearms were recovered by law enforcement does not establish a motive to provide false information.

Even if the evidence has some probative value, it is highly prejudicial and misleading to the jury on the false statement charges. While the Government has agreed not to admit the circumstances of each of these cases, the mere fact that the firearms were associated with illegal activity is damning enough on its own and the jury will inevitably draw negative inferences about Mr. Wittenberg. It would also be confusing and highly prejudicial to suggest that Mr. Wittenberg used a false address to conceal the transfer of firearms he knew would be used unlawfully when, again, he is not charged with straw purchasing. ATF may suspect that Mr. Wittenberg is actually a straw purchaser, but the Government does not have the evidence to charge it. Finally, it simply does not stand to reason that Mr. Wittenberg would use his grandmother's address to evade detection and

obscure unlawful activity when he has strong ties to this address and was easily located by using it.

Evidence that eight firearms were recovered by law enforcement is similarly irrelevant to the allegation that Mr. Wittenberg is engaged in the business of dealing firearms without a license. Under 18 USC § 922(a)(1)(A), it is unlawful for any person "except a licensed importer, licensed manufacturer, or licensed dealer, to engage in the business of importing, manufacturing, or dealing in firearms, or in the course of such business to ship, transport, or receive any firearm in interstate or foreign commerce." *See also Chacon v. Wilkinson*, 988 F.3d 1131, 1135 (9th Cir, 2021) (emphasizing that the statute criminalizes the *business* of unlicensed firearm distribution). The statute contains an extensive definition of what "engaged in the business" means. It requires that someone must "devote time, attention, and labor" to manufacturing, dealing, or importing firearms "as a regular course of trade or business *with the principal objective of livelihood and profit*" "through the sale or distribution of the firearms" or "the repetitive purchase and resale of firearms." 18 U.S.C. § 921(a)(21)(A), (C)-(E) (emphasis added). The phrase "with the principal objective of livelihood and profit" means "that the intent underlying the sale or disposition of firearms is predominantly one of obtaining livelihood and pecuniary gain, as opposed to other intents, such as improving or liquidating a personal firearms collection." *Id.* § 921(a)(22)

The mere recovery of these firearms is not probative of whether Mr. Wittenberg even *sold* these firearms, let alone did so with the principal objective of obtaining a livelihood and pecuniary gain. The police reports showing that the firearms were recovered

7

contain no information about how the parties involved came to possess the firearms. The jury will be left to draw negative connotations that Mr. Wittenberg is involved in some kind of illegal activity that he is not charged with. More concerningly, it will be left to the jury's imagination how the firearms were transferred to the parties named in the police reports. Those reports do not state whether the relevant firearms were, e.g., stolen, purchased, lent, or gifted, and they do not include any information about possession or transfer by Mr. Wittenberg. Even if the Court concludes that recovery of eight firearms is relevant to the "business dealing" charge, it should exclude this evidence for the danger of unfair prejudice. As described above, suggesting that Mr. Wittenberg intended for firearms to be used in criminal activity is highly prejudicial and likely to confuse the jury about uncharged straw purchasing conduct.

    ii.      The fact that Mr. Wittenberg did not call SA Tisch to schedule a viewing of his firearms is not relevant and to the extent that it is, it is outweighed by a danger of unfair prejudice. It also inappropriately gives to rise to negative inferences regarding Mr. Wittenberg's silence, in violation of the 5th Amendment.

SA Tisch should not be permitted to testify that Mr. Wittenberg did not call him to schedule a viewing of the firearms he purchased. For one, it is not relevant to the charges as to whether Mr. Wittenberg knowingly gave a false statement and or is engaged in the business of dealing firearms without a license. Moreover, it inappropriately implies that Mr. Wittenberg had some affirmative duty to disclose to ATF information that SA Tisch clearly believed may be incriminating. He did not have such a duty. U.S. Const. amend. V ("No person shall be . . . compelled in any criminal case to be a witness against himself.")

    iii.     Evidence that Mr. Wittenberg and his mother Ms. Quintero do not have a registered recreational vehicle is not relevant and to the extent that it is, it should be precluded because it is outweighed by a danger of unfair prejudice

8

The fact that Mr. Wittenberg and his mother do not have a registered recreational vehicle is not relevant. The only conceivable reason for introducing this evidence is to imply that Mr. Wittenberg lied about ownership of a recreational vehicle and thus lied when he told SA Tisch where the firearms were stored. This is misleading and prejudicial because neither Mr. Wittenberg, nor his mother, stated that they *owned* a recreational vehicle, let alone a registered recreational vehicle. The statement as recalled by SA Tisch in his report was "a" recreational vehicle, and no details were sought regarding the ownership of said recreational vehicle.

### III.  Conclusion

For the reasons stated above, Mr. Wittenberg respectfully asks the Court to preclude the Government from introducing the abovementioned information to the jury at trial.

Respectfully submitted:             November 20, 2025.


JON M. SANDS
Federal Public Defender

  *s/Cynthia Yializis and Elizabeth Hannah*
CYNTHIA YIALIZIS and ELIZABETH HANNAH
Assistant Federal Public Defender
*Attorneys for Defendant Wittenberg*